IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSEPH A. BROWN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16-cv-00303 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| CHARLES RATLEDGE, | ) |     United States District Judge |
|     Defendant. | ) | |

**MEMORANDUM OPINION**

Joseph A. Brown, a federal inmate proceeding *pro se*, filed a civil action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Charles Ratledge, the Warden of the United States Penitentiary in Lee County, Virginia (USP Lee).[1] Warden Ratledge filed a motion to dismiss, or in the alternative for summary judgment, Brown responded, and this matter is ripe for disposition.[2] For the reasons stated herein, the court grants Warden Ratledge's motion for summary judgment.

I. BACKGROUND

In 2009, Brown was criminally charged with assaulting a correctional officer at the United States Penitentiary in Atwater, California (USP Atwater).[3] After a psychiatric evaluation wherein Brown was found to be legally insane at the time of the offense, the criminal case was dismissed in 2011. (Brown Decl. ¶ 4, Dkt. No. 21, Attach. 2; Dr. AA. Howsepian, Psychiatric

---

[1] Brown moves for entry of default judgment against Warden Ratledge, arguing that Warden Ratledge failed to respond to Brown's complaint. *See* Dkt. No. 20. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Contrary to Brown's assertion, however, Warden Ratledge did timely respond (*see* Dkt. No. 17), and it appears that the response had not reached Brown by the time he filed his motion. Accordingly, the court denies his motion for default judgment.

[2] The court relies on exhibits attached to Warden Ratledge's motion; thus, the court will treat his motion as a motion for summary judgment and has given appropriate notice. *See* Fed. R. Civ. P. 12(d).

[3] The court notes that Brown alleges that he was charged in 2008, but documents that he submits with his complaint reflect that he was charged in 2009. The date does not affect the court's analysis.

Evaluation 2, Dkt. No. 21, Attach. 3.) After the assault at USP Atwater, Brown was designated to the Special Management Unit (SMU) at the United States Penitentiary in Lewisburg, Pennsylvania (USP Lewisburg).

The Bureau of Prisons (BOP) designates certain inmates who require greater management and oversight to its SMU program in order to ensure the safe, secure, and orderly operation of BOP facilities and the protection of the public. SMU designation is non-punitive. SMU placement is appropriate for any inmate who participates in disruptive gang-related activity; has a leadership role in disruptive gang activity; has a history of serious or disruptive disciplinary infractions; commits any 100-level disciplinary offense after being classified as a member of a disruptive group; participates in, organizes, or facilities any group misconduct that adversely affects the orderly running of an institution; or otherwise participates in or is associated with activity such that greater management of the inmate's interaction with others is necessary to ensure the safety, security, or orderly operation of BOP facilities, or protection of the public. (BOP Program Statement, *Special Management Units*, Dkt. No. 18, Attach. 3.)

Brown completed the SMU program at USP Lewisburg on March 1, 2015, and was designated to USP Lee on March 17, 2015. (Wahl Decl. ¶¶ 9-10, Dkt. No. 18, Attach. 1.) On August 20, 2015, while housed at USP Lee, Brown was charged with possessing a dangerous weapon and fighting with his cellmate. This incident was also part of a larger Special Investigative Services investigation into conflict between two inmate groups at USP Lee and resulted in a lockdown of the institution. (*Id.* ¶¶ 11-12, Compl. 6, Dkt. No. 1; Brown Decl. ¶ 8.) After a disciplinary hearing on August 26, 2015, Brown was convicted of both disciplinary charges. On August 27, 2015, Brown was placed on "transfer for segregation status"[4] and sent to

---

[4] "Transfer for segregation status" means that an inmate is removed from his designated institution and transferred to another institution to be held in that institution's Special Housing Unit (SHU). (Wahl Decl. ¶ 15.)

the Federal Correctional Institution in McDowell, West Virginia (FCI McDowell). (Wahl Decl. ¶¶ 13-14.)

A SMU referral was initiated at USP Lee on or about September 15, 2015. (*Id.* ¶ 16; Req. for Transfer, Dkt. No. 18, Attach. 6; Mem., Dkt. No. 18, Attach. 7.) Pursuant to the BOP's Program Statement for Special Management Units, if an inmate appears to meet any of the requirements for SMU placement, the inmate's Unit Team makes a SMU referral to the warden of the institution by submitting a request for transfer form and a memorandum discussing the reason for the referral, along with supporting documentation. If the warden approves the referral, the packet is submitted to the regional director. (BOP Program Statement, *Special Management Units*, Dkt. No. 18, Attach. 3.) In this case, Brown's SMU referral was based on, among other things, his disciplinary convictions for possessing a dangerous weapon and fighting with his cellmate and his poor adjustment to living at USP Lee. (Request For Transfer, Dkt. No. 18, Attach. 6.) The Regional Director for the BOP's Mid-Atlantic Regional Office received Brown's SMU referral on September 15, 2015. (SMU Review Worksheet, Dkt. No. 18, Attach. 8.)

Brown alleges that on September 23, 2015, "after being notified by staff of the Warden's pending referral for [Brown's] placement in [a Special Management Unit (SMU)]," Brown filed an informal grievance and attached a copy of a psychiatric evaluation, which he claims "classifies" him "as legally insane from chronic post traumatic stress disorder." Brown states that he handed the informal grievance directly to the Warden of FCI McDowell. He also alleges that the psychiatric evaluation and informal grievance were sent to Warden Ratledge before he

3

made the referral for Brown's designation to a SMU.[5] Brown states that he "never received a response" to the informal grievance. (Compl. 6-7; Brown Decl. ¶¶ 15-16.)

Pursuant to the BOP's Program Statement for Special Management Units, after receiving the referral packet from the institution, the regional director determines whether sufficient evidence exists for a hearing. If so, the regional director appoints a hearing administrator to conduct a hearing into whether the inmate meets the criteria for SMU designation. (BOP Program Statement, *Special Management Units*, Dkt. No. 18, Attach. 3.) In this instance, the Regional Director determined that sufficient evidence existed to warrant a hearing, and the matter was sent to a hearing administrator on September 25, 2015. (SMU Review Worksheet, Dkt. No. 18, Attach. 8.)

BOP policy provides that the hearing administrator must be impartial and must not have been a witness or victim in any relevant disciplinary action against the inmate. The inmate is provided at least twenty-four hours' notice prior to the hearing, and the notice explains the reason for referral, advises the inmate of his right to appear at the hearing, and informs him that a staff member will be available to assist in preparing documents. The inmate is allowed to be present at the hearing, make a statement, and present documentary evidence and written witness statements, as long as they are not contrary to the security, safety, or orderly operation of the facility. The hearing administrator makes findings regarding whether the criteria for SMU designation are met. The hearing administrator's report is sent to the regional director, who considers the hearing administrator's findings and makes a recommendation as to whether the inmate should be sent to a SMU facility. (BOP Program Statement, *Special Management Units*, Dkt. No. 18, Attach. 3.) On October 27, 2015, Brown was given notice of a hearing, but he

---

[5] The court notes that this is not factually possible since the referral from USP Lee was made on September 15, 2015 and Brown states that he handed the informal complaint to the warden of FCI McDowell on September 23, 2015.

4

refused to acknowledge that he received the notice. The hearing was held on November 6, 2015, and Brown waived his right to appear, declined staff assistance, and offered no additional information for the hearing. The Hearing Administrator found that Brown met the criteria for SMU designation and explained his findings in a report dated November 10, 2015. The Regional Director reviewed the findings and recommended Brown's designation at a SMU. (Hearing Administrator's Report, Dkt. No. 18, Attach. 10; SMU Review Worksheet.)

In accordance with the BOP's policy, the regional director's recommendation and hearing administrator's report are sent to the Designation and Sentence Computation Center (DSCC) where staff review pertinent information and, after consulting with the assistant director of correctional programs division in the BOP's central office, indicate if the SMU placement is approved. If approved, the DSCC determines the appropriate SMU facility based upon the inmate's needs. The inmate is given a copy of the report and is advised of the opportunity to appeal the decision directly to the BOP's Office of General Counsel. An appeal does not delay an inmate's transfer to a SMU program. (BOP Program Statement, *Special Management Units*, Dkt. No. 18, Attach. 3.) In this case, the DSCC and the Correctional Programs Division reviewed the findings and approved Brown's designation to a SMU on December 2, 2015. Brown was provided a copy of the decision on December 11, 2015, but refused to sign the acknowledgement that he received it. Brown was advised that he could appeal the decision through the administrative remedy program directly to the Office of General Counsel within thirty days. (Wahl Decl. ¶¶ 16-24.)

Brown was transferred to the SMU at USP Lewisburg on January 3, 2016. He alleges that while housed in the SMU on February 4, 2016, he was assaulted by an inmate and suffered

numerous fractures to [his] eye socket[] and other facial[] and head injuries," requiring him to be hospitalized." (Brown Decl. ¶ 25.)

Brown argues that Warden Ratledge referred him to the SMU as retaliation for the 2009 assault on staff at USP Atwater.[6] Brown also argues that Warden Ratledge violated BOP Policy Statement § 541.41(c)(1), which states that the warden may not refer an inmate for placement in a control unit if the inmate shows evidence of significant mental disorder or major physical disabilities as documented in a mental health evaluation or a physical examination. 28 C.F.R. § 541.41(c)(1).[7] (Compl. 7; CFR Printout, Dkt. No. 1, Attach. 1, at 11.)

Finally, Brown argues that Warden Ratledge denied him due process, subjected him to cruel and unusual living conditions by referring him to SMU, and denied his right to free speech by denying his "right to exhaust his administrative remedies." (Compl. 8-9.)

## II. DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

---

[6] The court notes that, after the warden of USP Atwater referred Brown to a SMU, Brown filed a *Bivens* action against that warden, raising strikingly similar claims to this action. *Brown v. United States*, No. 1:12-cv-00165-AWI-GSA-PC, 2014 U.S. Dist. LEXIS 129639, 2014 WL 4629052 (E.D. Cal. Sep. 13, 2014).

[7] The court notes that this provision applies to referral of an inmate to a "control unit." It is not clear that a SMU is a control unit. *Compare Milhouse v. O'Brien*, No. 1:15cv174, 2016 U.S. Dist. LEXIS 74324, *2-3, 2016 WL 3181855, at *1 (M.D. Pa. June 8, 2016) ("The Special Management Unit is not a "control unit" because a control unit imposes a super-maximum security regime, involving, inter alia, placement in solitary confinement. The Bureau of Prisons has operated only a few actual control units, e.g., the Administrative Maximum facility located at the United States Penitentiary Florence, Colorado ("ADX") . . . . Placement in a control unit is governed by Bureau of Prisons Program Statement 5212.07 while placement in a Special Management Unit such as exists at USP-Lewisburg is governed by Program Statement 5217.01."), *and Johnson v. Dodrill*, No. 3:cv04-0068, 2004 U.S. Dist. LEXIS 29458, *19 (M.D. Pa. Mar. 18, 2004) ("Johnson also complains of his placement in the Special Management Unit (SMU) at USP-Lewisburg. Because his placement there was not punitive in nature, the provisions applicable for a due process hearing for placement in a "control unit" do not apply as the SMU is no such type of unit. The SMU is designed to provide additional programming opportunities to inmates involved in a disruptive incident, and provide them with activities promoting their reintegration into general population.") *with Amawi v. Walton*, No. 3:13cv866, 2016 U.S. Dist. LEXIS 175095, *10, 2016 WL 7364768, at *3 (S.D. Ill. Nov. 17, 2016) (indicating that a SMU is a type of control unit).

movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment). In the Fourth Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, unsworn argument or statements do not constitute evidence to be considered in opposition to summary judgment.

*United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B. Exhaustion**

Warden Ratledge argues that Brown did not exhaust available administrative remedies before filing this action. Having reviewed the evidence before the court, the court concludes that Brown did not exhaust all available remedies. Accordingly, the court will grant Warden Ratledge's motion for summary judgment.

**1. The BOP's grievance process**

The BOP has established a multi-tiered administrative remedy process through which an inmate may seek formal review of issues that relate to any aspect of his confinement. 28 C.F.R. § 542.1, *et seq*. Ordinarily, an inmate must first attempt to informally resolve the issues with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is not successful, the inmate may file a formal written complaint addressed to the warden. If the inmate is not satisfied with the warden's response, he may appeal to the regional director within twenty days. 28 C.F.R. § 542.15(a). If the inmate is not satisfied with the regional director's response, he may appeal to the general counsel within thirty days. *Id.* The administrative process is exhausted when the general counsel issues a ruling on the appeal. 28 C.F.R. § 542.15(a).

There are certain exceptions to the initial filing at the institutional level, including an appeal related to placement in a SMU. 28 C.F.R. § 542.14(d). An appeal related to placement in a SMU should be submitted directly to the general counsel. *Id.* The general counsel must respond to an appeal within forty days unless an extension is granted in writing. 28 C.F.R.

§ 542.18. If an inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level. *Id.*

If a grievance or appeal is rejected at any level, the inmate is provided written notice of the objection. 28 C.F.R. § 542.17. If the defect on which the rejection is based is correctable, the notice will inform the inmate of a reasonable time extension within which to correct the defect and resubmit the grievance or appeal. *Id.* If the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection. *Id.*

**2. Brown's grievances**

Brown contends that while housed at FCI McDowell, he submitted an informal complaint on September 23, 2015, to the Warden at FCI McDowell personally, complaining about his referral to the SMU. Brown states that he did not receive a response. On October 4, 2015, Brown noted on the form that informal resolution was not accomplished. (Compl. 7; Informal Resolution Form, Dkt. No. 1, Attach 1, at 5.)

On October 6, 2015, Brown filed a complaint with the Warden of FCI McDowell, requesting that his transfer be withdrawn based on his "significant mental disorder." Brown states that he received no response, but BOP records show that it was received and rejected on October 7, 2015, noting that he must submit the appeal through his assigned unit team and must attempt informal resolution prior to filing a complaint with the Warden. (Brown Decl. ¶ 16; Request for Admin. Remedy, Dkt. No. 21, Attach. 3, at 12.) Brown claims that he then filed an appeal with the General Counsel on October 11, 2015, asking that the SMU referral be withdrawn. Brown states that he received no response, and BOP records reflect that the appeal was never received. (Compl. 7; Admin. Remedy Appeal, Dkt. No. 1, Attach. 1, at 1.) Brown then filed another appeal with the General Counsel on November 9, 2015, questioning his

9

transfer to a SMU. (Compl. 7; Admin. Remedy Appeal, Dkt. No. 1, Attach. 1, at 2.) BOP records show that the appeal was received on November 16, 2015, and there is no dispute that this appeal was rejected as illegible on December 7, 2015, or that Brown was advised that he could cure the defect and resubmit the appeal within fifteen days. (Wahl. Decl. ¶¶ 25-27; SENTRY Administrative Remedy Generalized Retrieval 5, Dkt. No. 18, Attach. 11; Brown Decl. ¶ 23.) BOP records reflect, and Brown submitted no evidence to contradict, that Brown did not resubmit or file another appeal regarding his referral to a SMU.[8] The court notes that Brown's SMU designation was made on December 2, 2015, and he had thirty days to file an appeal, but he did not.

### 3. Exhaustion

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). A *Bivens* action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "'[T]he language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensible requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that

---

[8] The court notes that Brown filed an unsworn response in opposition to Warden Ratledge's motion for summary judgment. *See* Dkt. No. 21. In this document, Brown states that he refiled the November 16, 2015 appeal after it was initially rejected, but he received no response to his refiling. Because the document is not sworn, it is not evidence that can be used to defeat a motion for summary judgment. *See White*, 366 F.3d at 300. Accordingly, the court has not considered this document in its analysis. Notably, Brown does not make the same statement in his verified complaint or his declaration that is signed under penalty of perjury.

10

exhaustion may occur.'" *Carpenter v. Hercules*, No. 3:10cv241, 2012 U.S. Dist. LEXIS 72096, at *12, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (emphasis in original) (quoting *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's action. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In this case, Brown had the opportunity to resubmit his rejected appeal to the General Counsel and did not. Brown submits no evidence to offer an explanation for his failure to pursue this remedy, and he has not demonstrated that administrative remedies were unavailable to him. Thus, the court concludes that Brown failed to exhaust available administrative remedies and, therefore, will grant Warden Ratledge's motion for summary judgment.

**C. Personal Involvement**

Even if Brown had exhausted the available administrative remedies however, Warden Ratledge is not the correct defendant. A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250 (2006). Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*. *See Farmer v. Brennan*, 511 U.S. 825, 839-41 (1994) (indicating that case law involving § 1983 claims is applicable in *Bivens* actions and vice versa). To state a claim under *Bivens*, a plaintiff must allege that a defendant is a federal agent who acted under the color of authority and engaged in unconstitutional conduct. *See Carlson v.*

11

*Green*, 446 U.S. 14, 23-24 (1980) (permitting a *Bivens* claim for damages to proceed against federal prison officials for an alleged violation of the Eighth Amendment).

Brown's claims against Warden Ratledge in his official capacity are not appropriate in a *Bivens* action. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (*Bivens* action does not lie against either agencies or officials in their official capacity). An action against "federal officers in their official capacities is essentially a suit against the United States, [and] such suits are [] barred under the doctrine of sovereign immunity . . . ." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475-79 (1994) (the United States has not waived sovereign immunity with respect to lawsuits that allege constitutional tort claims); *Deutsch v. U.S. Dept. of Justice*, 881 F. Supp. 49, 55 (D.C. Cir. 1995) (sovereign immunity bars any claims against the United States Department of Justice, the Federal Bureau of Prisons, or the individual Defendants in their official capacities). Accordingly, any claims against Warden Ratledge in his official capacity fail.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court abolished supervisory liability under *Bivens*. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. "Because *vicarious liability* is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. The Court held that "[i]n a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 667.

Brown names only Warden Ratledge as a defendant. Warden Ratledge avers that he reported to USP Lee as Warden on October 4, 2015. (Ratledge Decl. ¶ 3, Dkt. No. 18, Attach. 12.) The evidence before the court shows that the SMU referral was initiated at USP Lee on September 15, 2015, before Warden Ratledge was the Warden.[9] (Wahl Decl. ¶ 16.) While Brown states in his verified complaint and declaration that Warden Ratledge referred him to a SMU, his statements are not based on personal knowledge. Thus, it appears Warden Ratledge is named as defendant solely because of his position as warden of USP Lee. Without any actions taken by Warden Ratledge personally, he cannot be held liable for Brown's claims, and, thus, he is entitled to summary judgment.

**D. Merits**

In any event, even if Brown had exhausted available administrative remedies and if Warden Ratledge was the correct defendant, Brown's allegations nevertheless fail to state cognizable federal claims.

**1. Retaliation**

Brown alleges that Warden Ratledge referred Brown to a SMU as retaliation for Brown's assault on a correctional officer at USP Atwater in 2009. It is well-settled that state officials may not retaliate against an inmate for exercising his constitutional rights. *See American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). "Every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). "Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in . . . institutions." *Id*. In making a claim of retaliation against

---

[9] The court notes that the referral documents have Warden Ratledge's signature block, but he avers that the signatures on the documents are not his. (Ratledge Decl. ¶¶ 3, 6, and 7.)

prison officials, a plaintiff must allege that either the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. *Id*. at 75. Further, in order to sustain a cognizable retaliation claim, an inmate must point to specific facts supporting his claim of retaliation. *White v. White*, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Adams*, 40 F.3d at 75. Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred." *Brizuela v. Immigration Ctrs. of Am.*, No. 1:15cv1662, 2016 U.S. Dist. LEXIS 170161, at *12 (E.D. Va. Dec. 7, 2016) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

Brown's conclusory assertion of retaliation is insufficient to establish a cognizable retaliation claim. Brown does not allege that the referral to a SMU was done in response to the exercise of a constitutionally protected right and has not demonstrated that the act of referring Brown to a SMU violated a constitutional right. Further, Brown has not demonstrated specific evidence that would establish that, but for the alleged retaliatory motive, he would not have been referred to a SMU. Accordingly, Brown's allegations fail to state a retaliation claim.

**2. Due Process**

Brown alleges that Warden Ratledge denied Brown's right to due process by referring him to a SMU. To establish a violation of procedural due process guaranteed by the Fourteenth Amendment, an inmate must demonstrate a deprivation of "life, liberty, or property" by governmental action, which Brown has not done. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to "freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v.*

14

*Conner*, 515 U.S. 472, 484 (1995). Brown does not allege that his designation to SMU caused him to lose any good conduct time or that his sentence was otherwise altered as a result of his designation to a SMU. Brown also does not allege that his designation to a SMU imposed an atypical or significant hardship compared to the ordinary incidents of prison life. *See Oser v. Pollock*, 547 F. App'x 458 (5th Cir. 2013) (placement in any SHU or SMU after the expiration of prisoner's disciplinary sentence did not impose any atypical or significant hardship in relation to the ordinary incidents of prison life); *Robinson v. Norwood*, 535 F. App'x 81, 84 (3d Cir. 2013) (placement in the SMU at USP-Lewisburg did not implicate due process of law). Moreover, "a prison inmate does not have a protectable liberty or property interest in his custodial classification" and does not have a constitutional right to be housed in a particular facility. *See Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (citing *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). Classification of inmates is an administrative function, and prison officials can change an inmate's classification for almost any reason or no reason at all. *See Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Wolters*, 352 F. App'x at 928; *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n. 4 (5th Cir. 1993). Therefore, the court concludes that Brown's allegations do not state a due process violation.[10]

### 3. Living conditions

Brown alleges that Warden Ratledge violated his right to be free from cruel and unusual living conditions. However, Brown makes no specific allegations about his conditions of confinement or how Warden Ratledge is responsible for the alleged violation. "[A] pleading that

---

[10] Further, to the extent that Brown claims Warden Ratledge violated policy statements or regulations, he still fails to state a due process claim. A *Bivens* action "must be founded upon a violation of constitutional rights," *Arcoren v. Peters*, 829 F.2d 671, 676 (8th Cir. 1987), and "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *Riley v. Drew*, No. 4:12-1894-RMG, 2013 U.S. Dist. LEXIS 74094, 2013 WL 2285941, at *5 (D.S.C. May 23, 2013).

offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. To the extent Brown may be complaining about the conditions in the SMU at USP Lewisburg, he does not allege that Warden Ratledge has any authority or control over the conditions of confinement at USP Lewisburg. Accordingly, the court finds that Brown fails to state a cognizable Eighth Amendment violation.

### 4. Access to grievances

Finally, Brown alleges that Warden Ratledge denied his First Amendment rights by denying him access to administrative remedies. Again, Brown alleges no facts in support of his claim. Further, all of the grievances he alleges that he filed were filed after he left USP Lee. At most, Brown alleges that Warden Ratledge failed to respond to an informal grievance that Brown filed while at FCI McDowell. There is no evidence that Warden Ratledge received the informal grievance. In any event, his claim fails because an inmate has no constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the court finds that Brown fails to state a cognizable First Amendment claim.

### III. CONCLUSION

For the reasons stated herein, the court will grant Warden Ratledge's motion for summary judgment.[11]

---

[11] To the extent Brown's declaration in response to Warden's Ratledge's motion for summary judgment can be construed as a motion for summary judgment (*see* Brown Decl. 5), it is denied for the reasons stated herein.

An appropriate order will be entered.

Entered: September 29, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge